## JOSEPH COOPER and HENRY B. STAINES, Appellants, *vs.* EDWARD A. TAPPAN.

APPEAL FROM CIRCUIT COURT, DANE COUNTY.

Heard Sept. 26.] [Decided October 25, 1859.

*Injunction—Usury—Discovery—Pleadings—Evidence— Partnership.*

The court may be justified in refusing to dissolve an injunction upon motion, and yet refuse to grant the relief demanded in the bill, upon the final hearing on the same pleadings.

A bill charging usury, and praying discovery, should be dismissed upon a hearing on bill, answer, and replication, unless there is enough admitted in the answer to sustain it; but where there is sufficient in the answer, the bill will be sustained.

It is not competent for the parties to a transaction, by any device, arrangement, or agreement among themselves to defeat the policy of the statute of usury, and all such devices, arrangements, agreements, and understandings may be inquired into, and sifted in order to discover their real nature, and if found to be really intended to avoid the statute, are held to be void.

Where an answer in chancery admits facts which charge the defendant, and sets up, also, matters which discharge him, the latter is not evidence for him unless the charge and discharge arise out of one and the same transaction; in which case the answer may state the whole transaction, and it will all be held responsive to the bill, and be evidence in favor of the defendant.

Wheie a party makes a conditional agreement by which, upon the non-happening of a certain contingency, he is to receive usurious interest, but upon the happening of the contingency, he may withdraw his loan at only legal interest, such condition does not relieve the agreement of its usurious character.

An agreement was made that a party was to receive, as his share of a business, $250 every six months, in consideration of $2,000 advanced to the concern, without any reference to the fact whether the business produced any profit or not, and also that if there was danger that the party would loose the $2,000, he might immediately enter a judgment, and collect the amount upon execution. Such an agreement does not constitute a partnership between the parties thereto, but it is a usurious transaction.

Evidence is deduced from an answer by the same rules as from the confessions of a party; the court giving that portion which makes against a party its full force, and if that which is in his favor be unreasonable in itself, or be disproved by other witnesses, or be inconsistent with other facts in the same case, it is to be rejected altogether.

The facts of this case are stated fully in the former opinion of this court, 4 Wis. Rep., 363, and they will not be restated here.

*Abbott & Clark,* for the appellants.

*Smith & Keyes,* for the respondent.

*By the Court,* PAINE, J. This case has once been before this court, on an appeal by the defendant, from an order of the court below refusing to dissolve the injunction on bill and answer. The order was affirmed, and after the cause was remanded, a general replication was filed by the complainants, and it was brought to a hearing on bill, answer, and replication, and a decree made dismissing the bill. From this decree the complainants have appealed.

The case is fully stated in the former opinion of this court, 4th Wis. Rep., 363, and will not be repeated. It was claimed by the counsel for the complainants that the former opinion must control the case now; inasmuch as it stands 'n no better position for the defendant now than it did

then, nor so good, as the replication prevents anything in the answer not responsive to the bill from being taken as true. The counsel for the defendant, however, contended that the former opinion was on the question of dissolving the injunction on bill and answer, which is, to a certain extent, matter of discretion, and that it did not follow that because the court held that the injunction ought not then to be dissolved, it would, if compelled to decide it finally, on the same pleadings, hold that the bill was sufficiently confessed by the answer to justify granting the relief sought. We think this distinction exists, and that a case might be presented to a court in such a manner, that in its discretion it would be justified in refusing to dissolve the injunction, and yet not justified, on the same pleadings, in granting the relief asked. But we do not think this is such a case.

The rule is, undoubtedly, that the bill should be dismissed unless there is enough admitted in the answer to sustain it. Because, as no proof was taken by either party, every thing in the answer responsive to the bill, is to be taken as true, unless it defeats and destroys itself. The case, therefore, turns upon the construction and effect of the answer. In speaking of it, this court, in its former opinion, says: "Nor do we think that the answer of the defendant so fully denies the allegation of usury contained in the bill, as to warrant the dissolution of the injunction. Upon this part of the case we cannot express our opinion fully, without, perhaps, prejudicing the rights of the parties in the subsequent prosecution or defense of the suit. We, therefore, will only say, that the allegation of usury contained in the bill, is not so fully and satisfactorily denied, *and with such circumstances of credibility* as to justify the dissolution of the injunction." It is now our duty to examine it more thoroughly, and express a more full opinion in regard to it.

As already stated, if the bill is sustained at all, it must

upon the admissions of the [answer. It will, therefore, be necessary to compare them, to see how far the facts alleged in the former, to show usury, are admitted by the latter. The bill first alleges that Staines & Cooper purchased of the defendant $2,000 worth of goods, and gave a judgment note for that amount, payable one day after date; but that a verbal agreement was made, that the defendant was to wait two years for the pay. The answer starts with a general denial of this allegation, but then goes on to admit that on the dissolution of the firm of Tappan & Co., it was estimated that after a complete settlement of their affairs, Tappan would be entitled to $2,000 as his share of the assets, and that he did agree to let the complainants have that amount subject to be withdrawn on certain conditions · set forth, and that he did, accordingly, let them have $2,000 worth of the assets of Tappan & Co., and took therefor, the $2,000 note mentioned in the bill. There is no express allegation in the answer that the assets of Tappan & Staines were divided, and these $2,000 worth allotted to Tappan; but taking the allegation in the bill, that the complainants purchased the $2,000 worth of goods of Tappan, and the admission in the answer, that it was estimated that his share would be $2,000, which he was to leave with complainants, and that he did, accordingly, leave this $2,000 worth of the assets·of Tappan & Co.; we think it appears, with sufficient certainty, both by the bill and the answer, that this $2,000 worth of the assets of Tappan & Co., was treated as the share of Tappan, and as his separate property. Otherwise it is utterly incomprehensible how Staines would consent to give the note of Staines & Cooper for $2,000 worth of the assets of Tappan & Staines, of which Staines would be joint owner with Tappan.

Were these goods, then, *purchased* of Tappan ? There is no pretence in the answer that the goods themselves were ever to be withdrawn, but it is expressly admitted that upon

the happening of contingencies, upon which he was to be entitled to withdraw the amount, it was to be paid in money on the note. We think, therefore, the answer admits, that the goods were purchased by the complainants, and the $2,000 note given therefor.

Was there a verbal agreement to wait two years for the payment of the note, though drawn payable one day after date? The bill alleges that there was such an agreement, and that in consideration of such forbearance, the complainants gave defendant four other notes for $250 each, payable at intervals of six months. And here the defendants answer must be closely scrutinized. It is somewhat difficult to fix upon any tangible or explicit admission or denial, its allegations are so mingled up with the conditions which it asserts. But subject to these, including the conditional partnership alleged, it does admit that the $2,000 was to be left with the complainants, though it states no definite time fixed, and it does admit that the four other notes mentioned in the bill were given in consideration of leaving the $2,000.

There are, then, facts enough admitted in the answer to show the usury alleged in the bill unless its allegations in respect to the conditions and the partnership, are to prevent them from having that effect. What, then, is the bearing of these allegations? We think excluding that in relation to the partnership between the defendant and the complainants, they are entirely immaterial. Because, while admitting the sale of the goods, the giving of the $2,000 note therefor, and the giving of the four other notes, they go only to show, that upon the happening of the contingencies mentioned, the defendant might collect the $2,000 note, and was then to surrender up the four others to be cancelled. But if upon the supposition that these contingencies should not happen, and the defendant should leave the $2,000 with the complainants, as he says " he greatly hoped he could," the four other notes were to be paid

for the use of the $2,000.   It was then, notwithstanding these conditions, clearly a usurious agreement.   Because, if a party makes a conditional agreement, by which, upon the non-happening of a certain contingency, he is to receive usurious interest, but upon the happening of such contingency he may withdraw his loan at only legal interest, such condition does not relieve the agreement of its usurious character.   *Cleveland vs. Loder*, 7 Paige, 557, and cases cited.   And such, we think, is the only effect of the conditions alleged here, with the exception of the allegation in regard to the partnership between defendant and complainants.   This allegation is that if the defendant should leave the $2,000 with complainants, he was to be considered a partner with them, and the four other notes were given as his stipulated share of the profits.

It may be matter of doubt whether this is, strictly speaking, entitled to be considered as responsive to the bill, or is not rather new matter set up in avoidance of the facts, which the answer is compelled to admit, and which would otherwise amount to usury.   It is frequently difficult to tell under which of these heads, allegations in an answer fall, *Green vs. Vardiman*, 2 Blackf., 329, where many cases on the subject are referred to.

It would seem from these, that where the answer admits facts which charge the defendant, and sets up, also, matter which discharges him, the latter is not evidence for him, unless the charge and discharge arise out of one transaction, in which case the defendant may state the whole transaction, and it is all held responsive, and evidence in his favor.   But perhaps this answer should be distinguished from those which are held to charge and discharge the defendant, and that the latter are those only which, while admitting that the defendant was once liable to the charge set up in the bill, go to discharge him by some matter in avoidance.   But here, although we think the answer admits facts enough, which, un-

explained, prove the usury alleged, yet, if it avoids it all, it does not do it on the hypothesis that the usury really once existed, and is admitted and avoided, but by showing that it never did exist. And perhaps the phrase " matter in avoidance," as applied to an answer, relates only to such matter as avoids a conceded liability, and not to such as avoids the effect of facts admitted, which, if unexplained, might show the liability, but which, if explained, show that the liability never existed at all. So that a defendant, when answering a bill charging a tiansaction to have been of a certain character, although compelled to admit facts which would, alone, go to show the charge true, may, nevertheless, state other facts, which go to show that it really was of a different character, and be entitled to have the whole statement considered evidence for him.

We shall, therefore, without attempting to lay down any general rule on the subject, take the allegations in the answer respecting the partnership of the defendant with the complainants, as responsive to the bill, and evidence in his favor for what they are worth. But we are compelled to say that we regard them as a mere pretext, and that the facts admitted in the answer carry to our minds an irresistible conviction that the allegations of the bill are true. We cannot, on any other hypothesis, account for the admitted conduct of the parties. The whole transaction is inconsistent with the theory of any partnership, and the agreement which the answer sets up in regard to it does not in law constitute a partnership. To constitute this there must be some community of profit and loss. But here, by the agreement set up, the defendant was to receive absolutely $250, every six months, as his share of the profits, without any reference to whether the business produced any profits or not. And, in fact, there was an express understanding, that if the complainants should become embarrassed, so that there was any danger

that the defendant might lose his $2,000, then he could collect it immediately, and this was one of the conditions. Providing for an absolute sum as his share of the profits, without reference to whether there were any profits, shielding himself from loss by the power to enter an immediate judgment, whenever any loss was to be apprehended to him by reason of the unprofitable result of the business of the complainants. This is the agreement of the money lender and usurer, not of the partner. It lacks every element of a partnership, and is only like what the Roman jurists styled *societas leonina,* in allusion to the fabled hunting partnership between the lion and other beasts. It does not come so near being a partnership as there was in the case of *Colton vs. Dunham & Wadsworth,* 2 Paige, 267, which the court held to be clearly a case of lending and usury.

We think, therefore, in view of the entire statements of the answer, the idea that there was to be any real partnership between the plaintiffs and the defendant, is utterly incredible, and if any such conversation ever passed between them, it could only have been for the purpose of furnishing a pretext upon which to found an attempt to evade the statute against usury, like that disclosed in this answer.

Though we take the entire answer, therefore, as evidence, yet we consider it as we would any other testimony, and act upon the conviction which, as a whole, it produces upon our minds. And the facts which it admits we consider more effectual to show a usurious lending, than the naked statement of the defendant to show a partnership, and we have no doubt of our duty thus to treat the answer. The true rule upon this subject is thus stated in *Brown vs. Brown,* 10 Yerg., 91. " We deduce evidence from an answer in the same way, and under the same rules, that we receive proof of the confession of a party. Although that is subject to many suspicions to which admissions in an an-

Cooper and Staines vs. Tappan.

swer are not liable, still we give that which makes against a party its full force, and if that which is in his favor *be unreasonable in itself*, or be disproved by other witnesses, *or be inconsistent with other facts in the case*, we reject it altogether."

So in *Dunham vs. Gates et al.*, 1 Hoffman's Ch. Rep., 190 ; the court says : " But the question of credibility is very different from that of admissibility.   The court is not compelled to believe the answer though bound to receive it.   *It may carry its refutation within itself;* and, of course, the court is to decide whether the facts as sworn · to make out a case to bar the relief."

And although in the case just cited, and in others, as in *Hart vs. Jackson*, 11 Wend, 348, the courts held that the answers did not admit enough to warrant the relief ; yet applying the same rule in this case, we come to a different conclusion, and can say, as the court said in *Salle vs. Duncan*, 7th Monroe, 384 : " Upon the whole complexion of the answer, we have no hesitation in pronouncing the contract usurious."

The decree of the court below must be reversed, and the cause remanded, with directions to enter a judgment for a perpetual injunction, in accordance with the prayer of the bill.