GREEN v. GRANT.

1. TAXATION—MORTGAGES—COVENANT TO PAX TAX ON MORTGAGE.
   A covenant in a mortgage to pay all taxes levied upon the mortgaged property, "or upon or on account of this mortgage or the indebtedness secured hereby," is an agreement to pay the personal tax assessed against the mortgagee on account of the mortgage.

2. SAME—INTEREST.
   The payment by a mortgagor of the tax assessed upon the mortgage as a personal tax is not a payment to preserve the security, but is in the nature of interest upon the loan.

3. SAME—USURY—INTENT OF LENDER.
   An agreement by a mortgagor to pay the taxes assessed upon the mortgage as the personal property of the mortgagee is usurious where the lender knew that the aggregate of interest and taxes would exceed the maximum rate of interest allowed by statute, but is not usurious where he believed it would not exceed that rate. HOOKER, C. J., dissenting.

4. SAME.
>   Where, at the time of making the contract, the lender did not
>   believe that the aggregate of interest and taxes upon the
>   mortgage would exceed the maximum rate of interest allowed
>   by statute, he may recover for all the taxes he has paid on the
>   mortgage, and which the mortgagor agreed to pay, although
>   the aggregate of interest and taxes does exceed such rate.
>   HOOKER, C. J., dissenting.

Appeal from Bay; Shepard, J. Submitted January 13, 1903. (Docket No. 33.) Decided September 30, 1903.

Bill by Mary E. Green and Hezekiah M. Gillett, executors of the last will and testament of James A. Green, deceased, against Emeline M. Grant, to foreclose a mortgage. From a decree for complainants, defendant appeals. Affirmed.

*Simonson, Gillett & Clark,* for complainants.

*John L. Stoddard,* for defendant.

CARPENTER, J. This is an appeal in chancery from a decree for the foreclosure of a mortgage. The mortgage was given by defendant to complainants under date of December 11, 1899, to secure a loan for $12,000. It contained a covenant by the mortgagor to pay all taxes and assessments levied upon the mortgaged property, "or upon or on account of this mortgage or the indebtedness secured hereby, or upon the interest or estate in said lands created or represented by this mortgage or by said indebtedness, whether levied against the said mortgagor, her legal representatives or assigns, or otherwise." Another paragraph gave the mortgagees the usual right to pay these taxes in default of their payment by the mortgagor, and to add the sums so paid to the mortgage debt.

The only question in dispute between the parties is as to whether these clauses imposed upon defendant, as mortgagor, the liability to pay the personal mortgage taxes assessed against complainants in 1900 and 1901. In order to narrow the controversy as far as possible, defendant,

prior to the filing of the bill, paid all sums claimed to be due for principal and interest exclusive of taxes, and complainants released all of the mortgaged property excepting one lot. A bill was then filed upon the theory that the mortgagor was in default for failure to pay the amount represented by these taxes. Defendant filed a cross-bill, framed on the theory that the mortgage was paid in full, and that the complainants were liable for the statutory penalty for failure to discharge it. The circuit judge held that the amounts paid for taxes were properly chargeable against defendant as part of the sum secured by the mortgage, and entered the usual decree of foreclosure and sale, from which the defendant appeals.

The assessment, as it appeared on the roll, was, in 1900, "Personal, $12,000," and, in 1901, "Personal, $13,000." It was shown that in each instance the assessment to the extent of $12,000 was based on the mortgage in question. That this constituted an assessment "upon or on account of the mortgage or the debt secured thereby" is obvious. It is said by defendant that the assessment is against the person, because of his ownership of the mortgage; but, conceding this, the assessment is clearly "on account of" his ownership of the mortgage. See *Attorney General* v. *Board of Supervisors of Sanilac Co.*, 71 Mich. 16 (38 N. W. 639).

Is the agreement to pay 5 per cent. interest and all taxes and assessments levied on account of the mortgage or the debt secured thereby—the aggregate of taxes and interest amounting to 7¾ per cent., or three-fourths of 1 per cent. in excess of the maximum legal rate—usurious? Complainants contend that the court should say as a matter of law that no agreement by the mortgagor to pay taxes on the mortgage indebtedness is usurious. Defendant contends that the court should say as a matter of law that all such agreements are usurious when the aggregate of the interest and taxes exceeds the maximum rate authorized by law. The effect of complainants' contention is to make valid agreements to pay the maximum rate of interest

allowed by law and the taxes in addition thereto. The effect of defendant's contention is to make invalid all such agreements, even though at the time the agreement was made the parties to the contract supposed that the aggregate of interest and taxes would be less than the rate authorized by law. In our judgment, neither of these contentions is sound.

In support of their contention, complainants rely upon the decision of this court in the case of *Common Council of Detroit* v. *Board of Assessors*, 91 Mich. 78 (51 N. W. 787, 16 L. R. A. 59). It was there held that an agreement to pay the taxes imposed under the law of 1891 upon the mortgagee's interest in the estate did not render the contract usurious. The ground upon which this decision was based is therein stated as follows:

"Such an agreement does not amount to a reservation of interest, but is in the nature of an agreement to preserve the estate which constitutes the security, and is no more unlawful than an agreement to keep the property insured with a similar purpose."

In our judgment, that decision is inapplicable to the present case. When defendant pays a tax, as in this case, on account of complainants' ownership of the mortgage indebtedness, he is not making a payment to preserve the security, but he is paying money for the complainants' benefit, precisely as if paid directly to complainants.

Nor can we approve the decision of *Dubose* v. *Parker*, 13 Ala. 779, relied upon by complainants. In that case the borrower promised to pay the tax on the indebtedness in addition to the highest legal rate of interest allowed by the statute. The court decided that the agreement was not usurious, saying:

"The law has deemed it wise and just to permit the lender to realize as profit 8 per cent. per annum for the loan of his funds. By the contract in question he receives no more. The payment of the tax upon the loan is not very dissimilar from the payment of expenses for conveyances, which are usually borne by the borrower."

We are bound to disapprove this reasoning. When the lender received 8 per cent. and the payment of his own taxes, he did receive more than 8 per cent. The payment of the taxes is quite different from the payment of expenses for conveyances. The payment of the tax relieves the lender from an obligation which clearly rests upon him,— an obligation which did not arise by reason of the loan; while the payment of expenses for conveyances is a mere reimbursement for an outlay occasioned by making the loan. By the statement, "The law has deemed it wise and just to permit the lender to realize as profit 8 per cent. per annum for the loan of his funds," it is obviously intended to assert that the law permits the lender to receive from the borrower the maximum rate of interest authorized by law in addition to the taxes assessed on account of his ownership. We are bound to say that the law of Michigan cannot receive this construction. The statute of this State (see Act No. 207, Pub. Acts 1899) makes it lawful for the parties to stipulate in writing for the payment of any rate of interest not exceeding 7 per cent. per annum, and provides (see 2 Comp. Laws, § 4857):

"If it shall appear that a greater rate of interest has been directly or indirectly reserved, taken, or received than is allowed by law, the defendant shall not be compelled to pay any interest thereon."

We should disregard sound principles of statutory construction (see *Bullock* v. *Taylor*, 39 Mich. 137 [33 Am. Rep. 356] ), if we decided that this statute did not forbid the lender of money exacting for its use all beneficial consideration which exceeded the maximum legal rate of interest.

Complainants also refer to the case of *Banks* v. *McClellan*, 24 Md. 62 (87 Am. Dec. 594), where it was said:

"We consider that the charges for taxes on the mortgage, with simple interest on each item from the time it was paid, are allowable, Mr. McClellan having agreed to pay them, and the law authorizing such payments without incurring usury."

We cannot regard this case as an authority of value to complainants' position.

Opposed to the case of *Dubose* v. *Parker*, and in harmony with these views, is *Meem* v. *Dulaney*, 88 Va. 674 (14 S. E. 363). There it was decided that an agreement to pay 6 per cent. interest (the maximum rate under the statutes of Virginia) and the State taxes was usurious.

Nor can we assent to the contention of defendant that a contract is usurious because the aggregate of interest reserved and taxes paid exceeds the maximum allowed by the statute. In our judgment, such a contract is not usurious *per se.* Whether or not it is usurious depends upon the intention of the lender. If, at the time the contract was made, he knew that the aggregate of interest reserved and taxes to be paid would exceed the statutory rate,—as he would if the interest reserved was the maximum interest,—the contract is usurious. If, on the other hand, at that time he believed that the aggregate of interest and taxes would not exceed the maximum rate allowed by statute, it would be as contrary to law as to good morals to declare it usurious.

"It is the essence of an usurious transaction that there shall be an unlawful and corrupt intent on the part of the lender to take illegal interest, and so we must find before we can pronounce the transaction to be usurious." *Condit* v. *Baldwin*, 21 N. Y., at page 221 (78 Am. Dec. 137).

*Nourse* v. *Prime*, 7 Johns. Ch., at page 77 (11 Am. Dec. 403); *Bank of United States* v. *Waggener*, 9 Pet., at page 399; *Elliott* v. *Sugg*, 115 N. C. 236 (20 S. E. 450); *Varick's Ex'r* v. *Crane*, 4 N. J. Ch., at page 134; Tyler, Usury, p. 103.

The principle stated above is not confined in its application to cases where the interest has been paid partly in merchandise. It applies where the interest has been paid entirely in money, and that in excess of the statutory rate, where there was an intention to take no more than the legal rate. See *Duncan* v. *Savings Inst'n*, 10 Gill & J., at page 311; *Duvall* v. *Bank*, 7 Gill & J. 44.

Can we say that the mortgagee in this case intended by the transaction to take unlawful interest? Did he intend that he would secure more than 7 per cent. interest upon his investment? He knew that the interest promised him was 5 per cent. If he knew that the taxes assessed on account of the mortgage indebtedness would exceed 2 per cent., the transaction was usurious; otherwise it was not. Did he know that the aggregate of taxes would exceed 2 per cent.? The record does not enable us to answer this question. We know that in many localities in this State— and we think it may be said that in most localities—the aggregate of taxes does not exceed 2 per cent. We cannot, therefore, say that the mortgagees, at the time this contract was made, knew that the aggregate of taxes would exceed 2 per cent. We are bound, therefore, to say, under the authorities above cited, that there is no such proof of an intent to take unlawful interest as justifies us in pronouncing the transaction to be usurious.

Does the conclusion that the transaction was not usurious justify us in requiring defendant to perform a contract which, in effect, compels her to pay interest in excess of 7 per cent.? We think it does. If the contract was forbidden by law, all interest, and not merely that which exceeds 7 per cent., must be forfeited. If the contract was not forbidden by law, it is legal and enforceable according to its terms. While this particular question was not discussed in *Duncan* v. *Savings Inst'n* or in *Duvall* v. *Bank, supra,* it is to be observed that in each of these cases the borrower of money was compelled to pay interest in excess of the legal rate.

In our judgment, this case cannot, as urged by our Brother HOOKER, be decided upon the presumption that the parties intended by their contract to include taxes only to an amount which, with the interest reserved, would equal 7 per cent. The express language the parties have deliberately used precludes the adoption of any such presumption. The mortgagor expressly agreed to "pay *all* taxes and assessments * * * levied * * * on ac-

count of this mortgage or the indebtedness secured .hereby." To construe this agreement as if it contained the provision, "not exceeding 2 per cent.," is, in our judgment, to make a contract for the parties which they themselves did not make. The principle that "an agreement will not be adjudged to be illegal which is capable of a construction which will uphold and make it valid " has, we think, no application, because the agreement in question is not capable of the construction contended for.

We agree with the complainants that defendant is not justified in making any claim of relief on the ground of mutual mistake.

The decree of the lower court will be affirmed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred with CARPENTER, J.

HOOKER, C. J. (*dissenting*). The question raised by this record is whether an agreement by a mortgagor of land to pay 5 per cent. interest upon the amount secured by note and mortgage, and, in addition, "all taxes and assessments which shall be levied upon the said lands, or upon or on account of this mortgage or the indebtedness secured hereby, or upon the interest or estate in said lands created or represented by this mortgage or by said indebtedness, whether levied against the said mortgagor, her legal representatives or assigns, or otherwise," is usurious.

Inasmuch as the highest lawful rate of interest in this State was then 7 per cent., the contract was not usurious *per se*. If a promissory note or bond should stipulate that the payee's or obligee's taxes thereon should be paid by the maker or obligor in addition to the highest lawful rate of interest, there can be no question that the contract would be usurious. Counsel do not seem to question this, but insist that an agreement by a mortgagor to pay taxes does not fall within the rule, basing their contention upon some cases which they cite. The first of these is the case of *Banks* v. *McClellan*, 24 Md. 62 (87 Am. Dec. 594). All that was there said upon the subject was that:

"We consider that the charges for taxes on the mortgage, with simple interest on each item from the time it was paid, are allowable, Mr. McClellan having agreed to pay them, *and the law authorizing such payments without incurring usury.*"

Whether there was or was not a statute authorizing it does not appear. Perhaps an inference that there was such is proper; but, if not, there is nothing to show that such taxes were not taxes which were assessed against the mortgagor upon his property, and which he should of right pay. There is not an intimation that the mortgagee profited by such payment, and, if not, there was not usury.

The next case is *Dubose* v. *Parker*, 13 Ala. 779, where an agreement by the maker of a note to pay the highest rate of interest allowed by law, and taxes assessed to the payee, was held not usurious. It is a case in point, supporting complainants' claim, but based upon such fallacious reasons, and so at variance with principle, that we cannot follow it.

The other case is one of our own,—*Common Council of Detroit* v. *Board of Assessors*, 91 Mich. 78 (51 N. W. 787, 16 L. R. A. 59),—where it was held that an agreement to pay all taxes assessed against all interests in the real property owned by the mortgagor, including the interest granted to the mortgagee, was not usurious. Under our law a mortgagee takes only a lien by way of security, leaving the legal title in the mortgagor. It was said that:

"Such an agreement does not amount to a reservation of interest, but is in the nature of an agreement to preserve the estate which constitutes the security, and is no more unlawful than an agreement to keep the property insured with a similar purpose."

It is manifest that, if the debtor should pay his debt according to agreement, the creditor would get no benefit for the tax paid by him upon the land; nor would he if he did not, because on foreclosure he could recover only his debt and lawful interest through sale. His interest in the

land would then be gone, as would the money paid for taxes upon it. The case of *Kidder* v. *Vandersloot*, 114 Ill. 133 (28 N. E. 460), is in point on that proposition.

On the other hand, an agreement to pay 6 per cent. on a bond, and to save the obligee harmless from State taxes, was held to be usurious. *Meem* v. *Dulaney*, 88 Va. 674 (14 S. E. 363).

There are many instances where a contract is not *per se* usurious. That could be said in this case, for the contract does not indicate that the taxes will swell the interest to more than a 7 per cent. rate. Many cases hold that an agreement to pay premiums upon life insurance as a part consideration for a loan already drawing the highest rate of interest is usurious, but the better opinion is that it is not necessarily so *per se*, but may be shown to be. See Webb, Usury, § 326, and notes. In Boone, Mortg. § 81, it is said that an agreement to pay taxes on a mortgage is not necessarily usurious; citing *Banks* v. *McClellan*, 24 Md. 62 (87 Am. Dec. 594), which indicates the author's understanding of that case. It goes without saying that it may not be usurious *per se*, for the aggregate of the interest reserved and the taxes promised to be paid or afterwards levied may not exceed lawful interest.

In the present case the contract plainly requires the maker of the note and mortgage to pay 5 per cent., and taxes which may be assessed thereon as a credit against the payee. If it could be said that it was a certainty that the taxes, etc., would not exceed 2 per cent., it could not be said to be a usurious contract. If it could be said from the contract that they would, it would be as clearly usurious; but, as it could not be known what the taxes would be when the contract was made, it cannot be said to be usurious *per se*. The sequel has proved that the taxes were 2½ per cent., and it is now insisted that the complainants must suffer a forfeiture because they have not discharged the mortgage; and upon the same principle it might also be claimed that all unpaid interest should be forfeited.

Without expressing an opinion as to whether or not such would be the necessary result in any case, it need not be in this, for I think this contract is susceptible of a construction which will make it valid. It is a rule of construction that contracts shall be so interpreted as to make them valid, rather than illegal, where the language will permit. Thus, in *Merrill* v. *Melchior*, 30 Miss. 516, it is said, "Every presumption of law is in favor of the legality of a contract;" and in *Crittenden* v. *French*, 21 Ill. 598, that "the law will not so construe a contract as to make it illegal when it will bear a different construction making it legal." In *Ormes* v. *Dauchy*, 82 N. Y. 443 · (37 Am. Rep. 583), it was said, "The law will not presume a contract illegal, or against public policy, and so void, when it is capable of a construction which will make it lawful and valid." In *Archibald* v. *Thomas*, 3 Cow. 284, this rule was applied in a usury case, where it was said, "When a contract admits of two significations, that should be adopted which renders it operative, rather than that which renders it void;" and again, "If a contract is susceptible of two constructions, one of which will bring it within and the other without the statute of usury, the latter construction should be adopted." See, also, *Standard Oil Co.* v. *Scofield*, 16 Abb. N. Cas. 379. In *Lorillard* v. *Clyde*, 86 N. Y. 384, it was said, "An agreement will not be adjudged to be illegal when it is capable of a construction which will uphold and make it valid." *Powers* v. *Clarke*, 127 N. Y. 417 (28 N. E. 402). The federal courts hold the same doctrine. In *Hobbs* v. *McLean*, 117 U. S. 567 (6 Sup. Ct. 870), it is said, "When a contract is fairly open to two constructions, the one lawful and the other unlawful, the former must be adopted;" citing 2 Whart. Ev. (2d Ed.) § 1250; 2 Best, Ev. (6th Eng. Ed., 1st Am. Ed.) §§ 346, 347; *Shore* v. *Wilson*, 9 Cl. & F. 355; *Moss* v. *Bainbrigge*, 18 Beav. 478; *Mandal* v. *Mandal's Heirs*, 28 La. Ann. 556. This case was approved and followed in *U. S.* v. *Railroad Co.*, 118 U. S. 235 (6 Sup. Ct. 1038).

We have already said that this contract is not usurious on its face, and we should not asssume that the parties intended it to be an illegal thing when we can legitimately infer the contrary; and, while the strict letter of the contract would cover taxes in excess of 2 per cent., it is not unreasonable to suppose that the parties designed to include taxes only to an amount which, with the interest, would not be usurious.

It is suggested that an unlawful intent—*i. e.*, an intent to take more than the legal rate of interest—is necessary to make the contract usurious. It may be conceded that there are cases where such a rule may apply, but if we say that in this case, and affirm the judgment, we not only relieve the mortgagee from a forfeiture of the lawful interest, but give him a judgment for the excess over 7 per cent., which the record shows that he recovered in the circuit court, and is claiming here. There is a class of cases where this question of intent is important; *e. g.*, where one agrees to pay 5 per cent. and give the mortgagee a horse. There, if a jury can say that the value of the horse and the rate reserved so far exceed the legal rate as to show an intent to pay and take more than the legal interest, it is a usurious transaction, while, if they approximate the legal rate, the jury may be able to find that the parties treated the horse as of a value low enough to show an intention not to exceed the legal rate, and that there was no intent to evade the statute, in which case there would not only be no penalty imposed, but the contract might be enforced. This can hardly be true of a case where the entire payment consists of money. If the contract shows a reservation of, or the party receives, money to an amount exceeding the legal rate, such excess is usury, regardless of the intent, if it must be treated as interest; *i. e.*, compensation for the use of money. The Maryland cases cited are cases where a small excess had been actually paid.

It follows that, as the decree includes all of the taxes, it is erroneous. As the briefs do not discuss the amount of usury upon this theory, the amount due can be deter-

mined upon the settlement of the decree, if counsel cannot agree upon it, at which time the question of costs can be settled.